**ENERGY RESEARCH FOUNDATION, et al., Plaintiffs,**

v.

**DEFENSE NUCLEAR FACILITIES SAFETY BOARD, Defendant.**

Civ. A. No. 90–0530.

United States District Court, District of Columbia.

March 30, 1990.

Eric R. Glitzenstein and Dan W. Reicher, Washington, D.C., for plaintiffs.

Margaret S. Hewing, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiffs, two environment organizations and an individual, seek declaratory and injunctive relief requiring the Defense Nuclear Facilities Safety Board ("Board") to comply with the Sunshine Act ("Sunshine Act"), 5 U.S.C. § 552b, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1] The Board contends that because its functions are wholly advisory, it is not an "agency" to which the requirements of the Sunshine Act or the FOIA apply. This matter is before the Court on plaintiffs' motion for preliminary injunction and defendant's motion to dismiss or, in the alternative, for summary judgment.[2] The

---

1. The defendant argues that plaintiffs' request for relief under the FOIA must be dismissed for failure to state a claim upon which relief can be granted, because plaintiffs never made any request for records from the Board. The Court agrees that it is without jurisdiction to compel disclosure of documents, if no documents have be requested; however, it is clear that the issue

before this Court is whether the Board is subject to the FOIA requirements. The Court notes that during the hearing on March 27, 1990, defendant's counsel did indicate that the defendant had received a FOIA request from the plaintiffs the previous day.

2. The parties agree that the issue before the Court is purely legal and can be resolved as a

Court heard oral argument on March 27, 1990.

## I.

The Department of Energy ("DOE") and its predecessor agencies have been responsible for producing nuclear materials for national security purposes since the establishment of the Atomic Energy Commission in 1946. S.Rep. No. 232, 100th Cong., 1st Sess. 3 (1987) ("Senate Report"). Congress has become concerned about the safety of operations at the nation's defense nuclear complex. *Id.* at 4.[3] In September 1988, Congress enacted the Defense Nuclear Facilities Safety Board Oversight Act of 1987 ("Act"), 42 U.S.C. § 2286, *et seq.*, creating the Defense Nuclear Facilities Safety Board. The Board was created as an independent board to review the operation of the Department of Energy's ("DOE") defense nuclear facilities. In a report issued on November 20, 1987, the Armed Services Committee stated,

> The basic goals in establishing an independent safety oversight board are to assure and enhance the safety of operations of DOE's nuclear facilities and to restore public confidence that these facilities are operated without undue risk to public health and safety.

Senate Report at 20–21.

Congress provided that:

> The Board shall be composed of five members appointed from civilian life by the President, by and with the advice and consent of the Senate, from among United States citizens who are respected experts in the field of nuclear safety with a demonstrated competence and knowledge relevant to the independent investigative and oversight functions of the Board.

42 U.S.C. § 2286(b)(1). The Board's functions are to (1) review and evaluate all standards relating to the design, construction, and operation of defense nuclear facilities; (2) investigate any event or practice at a defense nuclear facility that has or may have an adverse affect on public health and safety; (3) systematically analyze design and operational data from any defense nuclear facility; (4) review the design and construction of new defense nuclear facilities; (5) make appropriate recommendations to the Secretary of Energy ("the Secretary") that the Board determines are necessary to ensure adequate protection of public health and safety. *Id.* §§ 2286a(1)–(5)[4]

In order to carry out its functions the Board may conduct hearings and has subpoena power to obtain witness testimony and the production of other evidence. *Id.* § 2286b(a). The Board may also prescribe regulations to carry out its responsibilities. *Id.* § 2286b(c). Further, the Board may establish reporting requirements for the Secretary which shall be binding upon the Secretary. *Id.* § 2286b(d). In addition, the Board may obtain the assistance and advice of government agencies and non-governmental groups. *Id.* § 2286b(f)–(g).

Congress requires the Board, after receipt by the Secretary, to make recommendations from the Board available to the public in the DOE's regional public reading rooms and by publication in the Federal Register. *Id.* § 2286d(a). The Secretary shall then respond in writing to the Board as to whether the Secretary accepts or rejects, in whole or in part the recommendations. *Id.* § 2286d(b). The Secretary must publish his or her initial response to the recommendations, as well as final decision, in the Federal Register. *Id.* §§ 2286d(b)(2), (d).

---

final matter on the merits. *See* Rule 65(a)(2), Fed.R.Civ.P.

**3.** Congress' four major concerns were: (1) a relative migration of expertise from the Department of Energy and its contractors to the commercial sector; (2) a degree of isolation of the Department's nuclear complex from developments, information sources, and analytic techniques that have grown up in the commercial

sector; (3) serious aging of facilities within the complex; and (4) severe budgetary constraints. *Id.*

**4.** In the case of imminent or severe threat, as determined by the Board, a recommendation shall be made at the same time to the Secretary and to the President; and for information purposes to the Secretary of Defense. *Id.* § 2286d(g)(2).

## II.

The Sunshine Act applies to "any agency, as defined in [the FOIA], headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). The Administrative Procedure Act, 5 U.S.C. § 551(1), defines the term "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency ..." For purposes of the FOIA the statute provides that the "term 'agency' as defined in § 551(1) ... includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(e).

This Circuit has stated that "any general definition of the term agency can be of only limited utility to a court confronted with one myriad organizational arrangements for getting the business of the government done ... The unavoidable fact is that each new arrangement must be examined anew and in its own context." *Public Citizen Health v. Department of Health, Education and Welfare*, 668 F.2d 537, 542 (D.C.Cir.1981); *Washington Research Project v. Department of Health, Education and Welfare*, 504 F.2d 238, 245–246 (D.C.Cir.1974).

In determining whether the board is an agency this Court must follow the "sole function test," enunciated in *Soucie v. David*, 448 F.2d 1067 (D.C.Cir.1971). *See also Washington Research Project v. Department of Health, Education and Welfare, supra; Public Citizen Health v. Department of Health, Education and Welfare, supra; Pacific Legal Foundation v. Council on Environment Quality*, 636 F.2d 1259 (D.C.Cir.1980); *Rushforth v.*

*Council of Economic Advisors*, 762 F.2d 1038 (D.C.Cir.1985). There is no rigid rule of general applicability for determining whether an entity is an "agency". *Public Citizens Health v. Department of Health, Education and Welfare*, 668 F.2d 537, 544 (D.C.Cir.1981) (Tamm, J. concurring).[5]

## III.

Upon review of the Act and the legislative history, the Court concludes that the Board is advisory in nature and is not an agency for the purpose of the Sunshine Act and the FOIA. The Armed Services Committee stated:

> The Committee is not persuaded that it is either necessary or wise at this juncture to establish an oversight board with other than advisory powers. The clear consensus among the expert witnesses consulted by the Committee is that an advisory board to the Secretary of Energy is the appropriate mechanism at this time. If an advisory board powers proves to be an insufficient answer, the Committee is prepared to take additional actions.

Senate Report at 21. The Court notes that in the original version of the bill the Board's recommendation would be binding upon the Secretary absent intervention by the President. *Id.* at 13. The Armed Services Committee disagreed with the Board having binding power. The final bill does not allow the Board's recommendations to be binding, but only advisory.

Although the Board has powers that are more expansive than a common advisory board; particularly, the power to have hearings, subpoena witnesses and require production of documents, those powers are only incident to the Board's functions to make appropriate recommendations to the Secretary. The only power, the Board has that is binding is to establish reporting requirements for the Secretary; however, that power is not enough to make the Board an agency.

---

**5.** Judge Tamm stated "[a]lthough the standardless nature of this review imposes an increased burden on future courts which must consider the question, I believe that this burden is an inevitable consequences of a political system in which the means by which the government carries out its functions, and the very boundary between governmental and non-governmental action, are in a state of perpetual flux. *Id.*

**30**

## IV.

For the reasons discussed above, the Court concludes that plaintiffs' motion for preliminary injunction should be denied and defendant's motion for summary judgment should be granted.